Filed 10/30/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051988 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS073199A) |
| v. | |
| ANIANO OLEA, | |
| Defendant and Appellant. | |

In 2009, a jury found Aniano Olea guilty of 25 counts related to acts of violence against his spouse Jane Doe[1], including inflicting corporal injury, torture, aggravated mayhem, assault with a deadly weapon, stalking, and dissuading a witness. The jury also found true an allegation that Olea personally inflicted great bodily injury on Jane Doe during the commission of one of the offenses for inflicting corporal injury. The trial court sentenced Olea to four consecutive indeterminate terms of seven years to life, consecutive to a determinate term of 20 years, for a total sentence of 48 years to life. Olea appealed his conviction, and this court affirmed the judgment. (*People v. Olea* (October 29, 2010, H034310) [nonpub. opn.] (*Olea*).)[2]

In 2024, Olea filed a petition requesting that the court recall and sentence him pursuant to Penal Code section 1172.1[3], based on changes to applicable sentencing laws

---

[1] We refer to the victim as Jane Doe, which is consistent with the trial transcripts, and to protect her personal privacy interests pursuant to California Rules of Court, rule 8.90(b)(4).

[2] On our own motion, we take judicial notice of this court's prior opinion in this case.

[3] Unspecified statutory references are to the Penal Code.

that had taken place since his original sentencing.  On March 28, 2024, the trial court declined to exercise its discretion to recall Olea's sentence and denied his petition.

On appeal, Olea contends that the trial court abused its discretion in denying his request for resentencing.  In response, the Attorney General claims that the appeal should be dismissed because the order denying Olea's request was not an appealable order affecting his substantial rights.

For the reasons discussed below, we find the trial court's order was appealable. However, we find that the trial court did not abuse its discretion in declining to recall and resentence Olea and affirm the order denying Olea's petition.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

*A.    Factual Background*[4]

Olea and Jane Doe met in early 1986 when she was pregnant with her eldest daughter and were married in 1989.  (*Olea, supra,* H034310 [nonpub. opn.].)  They lived in a rural part of Monterey County and had a daughter together in 1993.  (*Olea, supra,* H034310.)

Olea became abusive towards Doe from the beginning of their relationship and repeatedly questioned her about conversations with other men and her past sexual history. (*Olea, supra,* H034310.)  He also constantly hit her with his hands and various items, including a belt, a mallet, or a baseball bat.  (*Olea, supra,* H034310.)  Olea's physical abuse of Jane resulted in her suffering from numerous injuries, including bruising, swelling, scratch marks, a concussion, and a torn ACL.  (*Olea, supra,* H034310.)  On one occasion, Olea also burned the side of Doe's face with hot barbeque tongs.  (*Olea, supra,* H034310.)  He admitted that he put a GPS device on her car so that he could track her

---

[4] Our summary of the pertinent facts, which are not in dispute, is drawn from the factual background from the prior opinion in *Olea, supra,* H034310.

whereabouts.  (*Olea, supra,* H034310.)  In September 2006, during the course of the marriage, Doe attempted suicide by taking an overdose of pills.  (*Olea, supra,* H034310.)

Olea learned about tattooing as a teenager, and Doe willingly allowed Olea to put "dozens of tattoos" on her body.  (*Olea, supra,* H034310 [nonpub. opn.].)  However, Doe testified that she told Olea she did not want him to put certain tattoos on her.  (*Olea, supra,* H034310.)  This included tattoos of the word "adulteress" on her forehead, and the word "whore" on her neck.  (*Olea, supra,* H034310.)

## B.     *Procedural History*

### 1.  *Charges*, *Verdict*, *and Sentencing*

On November 20, 2008, the Monterey County District Attorney's Office filed a second amended information charging Olea with five counts of torture (§ 206; counts 1, 5, 12, 23 & 28), four counts of aggravated mayhem (§ 205; counts 2, 6, 13 & 24), 11 counts of inflicting corporal injury on Jane Doe (§ 273.5, subd. (a); counts 4, 11, 15, 16, 17, 20, 27, 29, 31, 32 & 33), five counts of mayhem (§ 203; count 3, 7, 14, 25 & 26), four counts of making criminal threats (§ 422; counts 8, 10, 18 & 19), and assault with a deadly weapon (§ 245, subd. (a)(1); count 9), dissuading a witness (§ 136.1, subd. (a)(1); count 21), stalking (§ 646.9, subd. (a); count 22), false imprisonment with violence (§ 237, subd. (a); count 30), possession of a firearm by a felon (§ 12021, subd. (a)(1); count 34), and possession of ammunition by a felon (§ 12316, subd. (b)(1); count 35).  The information further alleged that during the commission of the offense in count 4, Olea personally inflicted great bodily injury upon Jane Doe (§ 12022.7, subd. (e)), and that Olea had been previously convicted of use of an explosive destructive device (former § 12303.3), which constituted a prior strike offense (§ 1170.12, subd. (c)(1)).

On February 26, 2009, following a nine day trial, the trial court granted Olea's trial counsel's request to dismiss counts 5 through 7 pursuant to section 1118.1.[5]  The

_____

[5] This section provides in pertinent part that at the close of the evidence for either side and before presentation of the case to the jury, the court can, on motion of the

prosecution also dismissed counts 2, 3, 12, 14, 23, 25 and 30.  (*Olea, supra,* H034310 [nonpub. opn.].)  On March 9, 2009, the jury found Olea guilty on the remaining 25 counts (which were renumbered prior to submission to the jury) and also found true the allegation for great bodily injury as to one of the counts for inflicting corporal injury (count 4).

On June 2, 2009, the trial court sentenced Olea to a total aggregate term of 48 years to life in state prison, which consisted of the following: (1) four consecutive indeterminate terms of seven years to life for two convictions for torture (counts 1 and 19) and two convictions for aggravated mayhem (counts 7 and 16); (2) one consecutive middle term of four years for mayhem (count 17), which the court designated as the principal term; (3) 10 consecutive terms of one year each (one third the middle term of three years) for assault with a deadly weapon (count 4) and nine convictions of inflicting corporal injury (counts 6, 8, 9, 10, 13, 18, 21, 22, and 23); (4) one consecutive term of two years (one third the middle term of six years) for dissuading a witness (count 14); and (5) six consecutive terms of eight months each (one third the middle term of two years) for three convictions of criminal threats (counts 3, 5, and 12), stalking (count 15), weapon possession (count 24), and ammunition possession (count 25).  The court stayed the sentences on counts 2, 11, and 20 pursuant to section 654.

### 2.  Section 1172.1 Resentencing Petition and Proceedings

#### a.  Initial Petition and Subsequent Proceedings

On January 5, 2024, Olea filed a document entitled "Request for Recall of Sentence and Sentencing Pursuant to pursuant to Assembly Bill 600 and Penal Code Section 1172.1."  In his petition, Olea stated that he should be resentenced due to changes to applicable sentencing laws, namely, section 1170 and 1170.1, since the time of his

---

defendant, order an entry of acquittal for any offenses charged in the information for which the evidence would be insufficient to sustain a conviction for the offenses on appeal.

sentencing. While Olea acknowledged that his sentence was "fair and just," he claimed that it no longer served the purpose of which it was originally imposed, which was to " 'remove a monster from society.' " Olea stated that he had taken significant steps towards self-improvement while in prison, including obtaining his G.E.D. and taking numerous classes on domestic violence, childhood trauma, and anger management; he also noted that he had been "discipline-free" since 2010. Olea further indicated that his violent behavior and actions stemmed from his own trauma of sexual abuse as a teenager, and that his engagement in the healing process had "broken" the cycle of violence. Finally, Olea took responsibility for the pain that he caused others and expressed remorse for his actions. In support of his petition, Olea attached exhibits reflecting his self-improvement in prison; he also checked a box requesting counsel.

Following the filing of Olea's petition, the court placed the matter on calendar for January 25, 2024; the minute order reflects that the hearing was for "Setting and Identification of Counsel." At the hearing, at which the People were present, the trial court appointed counsel to represent Olea and continued the matter to February 20, 2024, for "Hearing: Setting PC 1170.1"

On January 29, 2024, Olea's newly-appointed counsel filed a pleading entitled "Defense 1172.1 Invitation to Recall Sentence," which cited the same recent changes to applicable sentencing laws as Olea's initial petition, and detailed the authority for the court to recall Olea's sentence under section 1172.1 Counsel also noted Olea's "tremendous strides in prison," and asserted that such efforts demonstrated Olea was no longer a danger to society.

Also on January 29, 2024, the People filed an opposition to Olea's request, indicating that the court should not entertain Olea's request to recall his sentence because of the "abhorrent nature" of his conduct. Although the People acknowledged that Olea was eligible for resentencing because of changes to applicable sentencing laws, the People noted that there was no requirement or presumption under section 1172.1 that the

court recall Olea's sentence, and the decision to recall was entirely discretionary. The People therefore argued that the egregiousness of Olea's abuse justified him being sentenced to four consecutive indeterminate terms due to such conduct, and recall was not warranted.

At the February 20, 2024 hearing, at which both the People and Olea's counsel[6] were present, the minute order indicates that the trial court had received subpoenaed records from Valley State Prison, which it found "to be relevant and order[ed] them released to the Defense." The trial court also directed Olea's counsel to provide copies of the subpoenaed records to the People. The matter was set for a hearing on Olea's section 1172.1 petition on March 28, 2024.

On February 23, 2024, Olea's counsel submitted additional exhibits to the trial court for its consideration, which consisted of various documents in his subpoenaed prison file. The People also filed a supplemental opposition on March 14, 2024, which again acknowledged the trial court's jurisdiction to recall Olea's sentence pursuant to section 1172.1 due to changes in the law but reiterated the "heinous" nature of Olea's crime, his "unsuitability" for resentencing, and the sentencing judge's intention that Olea never be released from prison.

### b. Hearing and Order

On March 28, 2024, the trial court held a hearing on Olea's petition for resentencing. Olea was in custody and appeared remotely with his appointed counsel. At the outset of the hearing, the trial court invited both parties to present further argument on their positions. Olea's counsel argued that the court should recall and resentence Olea based on numerous mitigating factors, including his childhood trauma, the significant

---

[6] The record reflects that Olea's counsel appeared without Olea on his behalf pursuant to section 977, which permits a defendant in a felony matter to execute a written waiver of his or her right to be personally present at all stages of the proceedings and permits counsel to appear on his or her behalf. (§ 977, subd. (b)(2).)

6

efforts at rehabilitation he had made in prison, and changes to his thought process, all of which made him no longer a danger to society. The People reiterated their opposition, noting that Jane Doe was "re-traumatized" at the idea of Olea's sentence being reduced, and she would not feel safe if he were released.

The trial court ultimately stated it would not "exercise its discretion to recall [Olea's] sentence and will not recall and resentence the defendant at his request pursuant to Penal Code Section 1172.1." In making its ruling, the trial court cited section 1172.1, subdivision (c), which indicated that a defendant was not entitled to file a petition seeking relief under section 1172.1, and if such a petition was filed, the court was under no obligation to respond. The court also noted that it found the original sentence to be just, particularly given the "extremely abhorrent and shocking actions" Olea committed against Jane Doe, and that the conduct was so egregious that the original sentencing judge was "compelled" to sentence Olea to four consecutive indeterminate life terms.

Olea timely appealed.

## II. DISCUSSION

### A. *Applicable Law and Standard of Review*

Under section 1172.1, a trial court may recall a sentence and resentence a defendant "at any time" upon the recommendation of various designated correctional or law enforcement authorities, including the Secretary or the Board of Parole Hearings, the county correctional administrator, the district attorney of the county in which the defendant was sentenced, or the Attorney General. (§ 1172.1, subd. (a)(1).) The trial court may also recall and resentence a defendant "on its own motion" within 120 days of the date of commitment. (§ 1172.1, subd. (a)(1).) In addition, pursuant to an amendment effective January 1, 2024, a trial court now also has jurisdiction to recall a sentence and resentence a defendant on its own motion "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or

7

case law." (§ 1172.1, subd. (a)(1); Assem. Bill No. 600 (2023–2024 Reg. Sess.) (Assembly Bill 600).)

However, "[a] defendant is not entitled to file a petition seeking relief from the court under [section 1172.1]. If a defendant requests consideration for relief under this section, the court is not required to respond." (§ 1172.1, subd. (c).)

**B.      *Appealability of Trial Court's Denial of Olea's Petition***

As a threshold matter, the Attorney General claims that Olea's appeal should be dismissed because the trial court's order is a nonappealable order. Specifically, the Attorney General argues that because Olea was statutorily foreclosed from independently bringing a request for recall and resentencing under section 1172.1, the court's denial of this request did not affect his substantial rights. In response, Olea argues that because the trial court chose to respond to his petition and hear argument from both sides, the court's subsequent denial of his petition is appealable. Olea further argues that case law establishes that a defendant may appeal a court's order affecting his substantial rights even if the defendant lacks authority to bring a motion requesting such relief.

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159 (*Loper*).) Section 1172.1 does not address whether a trial court's denial of a defendant's request for recall and resentencing under the section is appealable. With that said, under section 1237, an appeal may be taken by a defendant "[f]rom any order made after judgment, affecting the substantial rights of the party." (§ 1237, subd. (b).)

In the recent case of *People v. Hodge* (2024) 107 Cal.App.5th 985 (*Hodge*), the defendant filed a document entitled "request for recall of sentence and resentencing pursuant to Assembly Bill 600 and Penal Code section 1172.1." (*Hodge, supra,* at p. 991.) Without holding a hearing, the trial court issued an order indicating that it was declining to exercise its discretion to recall the defendant's sentence. (*Ibid.*)

8

The Second District Court of Appeal found that this order was nonappealable and concluded that because a trial court was under no obligation to respond to a defendant's unauthorized request for resentencing under section 1172.1, the defendant did not have a right to a ruling, and therefore no liberty interests were at stake. (*Hodge,* at p. 996.) Further, the *Hodge* court noted that it would be "irrational and arbitrary" for a defendant whose unauthorized request was formally denied by the court to have the right to appeal, when a defendant, whose similar request was not responded to or acted on, would not have the same right. (*Ibid.*) The *Hodge* court also noted that while section 1172.1 provided certain criteria for a court to consider during resentencing proceedings, such criteria only applied to authorized motions for resentencing by designated authorities or the court itself, not unauthorized motions initiated by defendants. (*Hodge, supra,* at p. 998.) Finally, the *Hodge* court indicated that under section 1172.1, subdivision (d), a trial court was only required to advise a defendant of his or her right to appeal after an authorized referral. (*Hodge,* at p. 999.) Accordingly, "[t]he absence of any obligation by the trial court to advise the defendant of a right to appeal the denial of the defendant's unauthorized request for resentencing strongly suggests that the Legislature did not intend to create such a right." (*Ibid.,* footnote omitted.)

We requested supplemental briefing from the parties regarding the implication of *Hodge* on the decision in the instant matter.[7] In their briefs, both parties noted that the Fourth District Court of Appeal had also recently considered the same issue in *People v. Faustinos* (2025) 109 Cal.App.5th 687 (*Faustinos*), and had reached a similar conclusion to the court in *Hodge.*

---

[7] In our supplemental briefing request, we also referenced the decision in *People v. Chatman* (February 5, 2025, F087868) [nonpub. opn.], opinion ordered vacated March 3, 2025, which reached the opposite conclusion as *Hodge.* However, the opinion in *Chatman* was vacated pending rehearing, and the appeal was later dismissed. Accordingly, the parties did not discuss *Chatman* in their briefs, and we shall not address it.

In *Faustinos,* the trial court took no action on the defendant's self-initiated petition for resentencing pursuant to numerous changes in sentencing law, including section 1172.1, but simply issued an order indicating that it did not have jurisdiction to consider the defendant's motion. (*Faustinos, supra,* 109 Cal.App.5th at p. 693.) The appellate court concluded that such an order was nonappealable because it did not affect the defendant's substantial rights. (*Id.* at pp. 695–697.) In agreeing with the *Hodge* decision the court noted that there were four possible approaches that a trial court could utilize in denying a defendant-initiated petition for resentencing under section 1172.1: (1) it could not respond at all, as authorized under the statute; (2) it could issue an order indicating that the defendant was not entitled to initiate a petition; (3) it could go beyond its obligation and indicate that it was not going to act on its own motion to resentence; or (4) it could respond by noting, if appropriate, that it lacked jurisdiction to resentence if 120 days had already passed and no recent changes had been made to applicable sentencing laws. (*Faustinos, supra,* at pp. 696–697.) The *Faustinos* court held that in any of these scenarios, the orders issued would not affect the defendant's substantial rights, thus rendering them nonappealable. (*Id.* at p. 697.) Accordingly, the court concluded that "there is no appellate jurisdiction over an order declining to act on a defendant's unauthorized section 1172.1 petition, even though a court may initiate a resentencing on its own motion." (*Ibid.*)

In arguing that the decisions in *Faustinos* and *Hodge* should not apply, Olea contends that the proposition in both cases, namely, that a defendant has no right to appeal a motion that he or she lacks the ability to formally initiate, was specifically disapproved of by the Supreme Court in *Loper, supra,* 60 Cal.4th at p. 1155. Moreover, Olea argues that unlike the trial courts in *Faustinos* and *Hodge,* the trial court here responded to Olea's petition by appointing counsel, releasing subpoenaed material, and setting a date for argument. Olea claims that as a result, the trial court's final decision

amounted to an exercise of its discretion and resulted in an order affecting his substantial rights.

In response, the Attorney General contends that based on the decisions in *Faustinos* and *Hodge*, we should similarly find the trial court's denial of Olea's petition nonappealable. The Attorney General argues that there should be no distinction drawn between the trial court declining an invitation to recall without a hearing, as it did in *Hodge* and *Faustinos*, and the trial court choosing to appoint counsel and holding a hearing before denying an invitation to recall, as it did in the instant matter. In support, the Attorney General notes that the *Hodge* court rejected such a distinction and indicated that drawing this line would "result in an unprincipled and arbitrary rule governing the appealability of trial court decisions on defendants' requests for relief under section 1172.1." (*Hodge, supra,* 107 Cal.App.5th at p. 996.) In other words, the Attorney General asserts that whether or not the court simply ignores the invitation or issues an order denying the same, the legal effect of either action remains the same. The Attorney General further notes that according to *Faustinos*, it is the nature of the decision being made, as opposed to the court's reasoning behind making such a decision, that determines appealability. (*Faustinos, supra,* 109 Cal.App.5th at p. 698.) Accordingly, the Attorney General argues that the procedure leading up to the trial court's denial of Olea's invitation to recall does not change the nature of the decision or render the resulting order appealable.

In addition to *Hodge* and *Faustinos*, we note that the Third District Court of Appeal recently dealt with the same issue of appealability in *People v. Roy* (2025) 110 Cal.App.5th 991 (*Roy*). In *Roy,* the defendant also petitioned for resentencing under section 1172.1, and the trial court issued a written order dismissing the request, where it indicated that it was declining to make its own motion for recall and resentencing. (*Roy, supra,* at p. 995.) The appellate court similarly applied the reasoning in *Hodge* in determining that the trial court's order dismissing the defendant's section 1172.1 petition

11

was nonappealable. (*Roy,* at p. 998.) However, the *Roy* court was "not persuaded that [section 1172.1, subdivision (c)] alone renders an order denying a defendant-initiated section 1172.1 request nonappealable." (*Roy, supra,* at p. 998.) Nevertheless, the *Roy* court concluded, where the trial court simply responds to a defendant's self-initiated petition with an order indicating it was declining the request for recall and resentencing, the defendant's substantial rights were not affected by the challenged order because the trial court had no obligation to act on the defendant's resentencing request. (*Id.* at p. 998, 1001.)

As the parties note in their supplemental briefing, *Hodge*, *Roy,* and *Faustinos* relied on their interpretations of two California Supreme Court cases: *Loper, supra,* 60 Cal.4th at p. 1155, and *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony*) in reaching their decisions. In *Loper,* the California Supreme Court held that a trial court's order denying a request initiated by the California Department of Corrections and Rehabilitation (CDCR) for compassionate release pursuant to section 1170, subdivision (e), was an appealable order, even though the defendant had no independent right to initiate such a request. (*Loper, supra,* 60 Cal.4th at p. 1161, fn. 3.) In making this decision, *Loper* relied in part on a similar holding in *Carmony*, where the California Supreme Court held that even though a defendant could not initiate a motion to dismiss prior strike offenses under section 1385, he or she still had the right to invite a court to exercise its own powers to do so; therefore, the defendant was not precluded "from raising the erroneous failure to [exercise such discretion] on appeal." (*Carmony, supra,* 33 Cal.4th at p. 376.) In particular, the *Carmony* court noted that if the prosecution was entitled to appeal the court's decision to dismiss a strike prior offense—even if the prosecution did not originally move for the court to do so, a defendant should have "the concomitant power to appeal a court's decision not to dismiss a prior under section 1385 even though he or she cannot make a motion to dismiss." (*Carmony, supra,* 33 Cal.4th at p. 376.)

The *Hodge* court distinguished *Loper* by noting that the request for compassionate release was specifically authorized by statute, as it was initiated by the CDCR, whereas a defendant's independent petition for resentencing under section 1172.1 is unauthorized and "create[s] no statutory obligation to act." (*Hodge, supra,* 107 Cal.App.5th at p. 997.) The *Hodge* court further indicated that while sections 1170, subdivision (e), and section 1385 provided specific criteria and limits on the trial court's discretion to deny requests brought under those statutes, section 1172.1 placed "no constraints" on a trial court's decision declining to reconsider a sentence on its own motion. (*Hodge, supra,* at p. 997.) The *Hodge* court therefore concluded that the holdings in *Loper* and *Carmony* did not render the denial of the defendant's section 1172.1 petition appealable. The courts in *Faustinos* and *Roy* reached similar conclusions*,* with both courts additionally noting that *Carmony* dealt with an appeal from a direct judgment where jurisdiction was automatic, as opposed to a postjudgment appeal where there is no preexisting jurisdiction. (*Faustinos, supra,* 109 Cal.App.5th at p. 699; *Roy, supra,* 110 Cal.App.5th at p. 1000.)

We acknowledge that the trial court issued its ruling in the instant matter without the guidance provided in *Hodges, Roy,* and *Faustinos*.[8] However, in reviewing the record before us, we agree with Olea that the present case differs from *Hodge, Roy,* and *Faustinos* such that the order issued affected Olea's substantial rights. It is noteworthy that the trial court took a number of procedural steps that did not take place in the aforementioned cases, including appointment of counsel at Olea's request, ordering the release of subpoenaed records from the CDCR to the defense, ordering the defense to provide copies of these records to the People, and setting a contested hearing on Olea's

---

[8] We also note that the First District Court of Appeal recently issued a decision in *People v. Brinson* (2025) 112 Cal.App.5th 1040 (*Brinson*), agreeing with the holdings in *Faustinos, Roy,* and *Hodge* that denial of a defendant-initiated petition under section 1172.1 is nonappealable. *Brinson* similarly involved the trial court issuing an order, without holding a hearing, where it indicated it had received the defendant's request for recall and resentencing and was taking no action on the request pursuant to section 1172.1, subdivision (c). (*Brinson, supra,* 112 Cal.App.5th at pp. 1044–1045.)

request, at which Olea appeared remotely. In particular, we note that the subpoenaed records from the CDCR document Olea's behavior and activities in prison, which are explicitly listed in section 1172.1, subdivision (a), as postconviction factors that the court "shall" consider when evaluating the merits of a request to recall and resentence. (§ 1172.1, subd. (a)(5).) Also, before releasing these prison records to Olea's counsel and the district attorney, the trial court specifically noted that it found these records "relevant" to the proceedings. Moreover, the trial court then set the final hearing on March 28, 2024, heard argument from both parties and made statements in its final ruling that reflected it had reviewed the original sentence in full, along with the briefs and attached exhibits. Though the court indicated that it was declining Olea's invitation to recall and resentence him, it also stated that it found the original sentence to be "just" based on the "extremely abhorrent and shocking actions" Olea committed against Jane Doe, and that the conduct was so egregious that the original sentencing judge was "compelled" to sentence Olea to four consecutive indeterminate life terms.

As noted above, the plain language of section 1172.1, subdivision (c) indicates that a court is "not required to respond" to a defendant's self-initiated petition for recall and resentencing. We agree with Olea that this case is distinguishable from *Faustinos, Roy,* and *Hodge* where the trial courts did not hold hearings and simply issued orders indicating they were declining to act on the unauthorized petitions before them. In contrast, the steps taken by the court in this case were markedly different. In our view, although it may have been well intentioned, the trial court chose not only to respond, but it did so in a manner which effectively mirrored those rights afforded to a petitioner after a resentencing request has been initiated by one the enumerated agencies in section 1172.1, subdivision (b)(1), which states that "[i]f a resentencing request pursuant to subdivision (a) is from the Secretary of the Department of Corrections and Rehabilitation, the Board of Parole Hearings, a county correctional administrator, a district attorney, or the Attorney General, all of the following shall apply: [¶] The court shall provide notice

14

to the defendant and set a status conference within 30 days after the date that the court received the request. The court's order setting the conference shall also appoint counsel to represent the defendant."  Also significant to our determination of appealability is that after providing both sides an opportunity to be heard at a contested hearing on March 28, at which Olea was present, the trial court reached the merits of why it was, in part, declining to grant the request under section 1172.1 by stating it found the original sentence to be appropriate, particularly given the crimes Olea committed against Jane Doe.  Considering the entirety of the actions taken by the trial court following Olea's initial petition—in conjunction with merit-based statements made at the contested final hearing, the trial court effectively evaluated and denied Olea's petition on the merits, thus affecting Olea's substantial rights.  (See, e.g., *Carmony, supra,* 33 Cal.4th at p. 375 [noting that even if a defendant does not have the right to petition for relief, he does have the right to "invite the court to exercise its power" to do so and may raise a trial court's failure to do so on appeal].)  Therefore, we conclude that the trial court's decision is appealable.

## C.    *The Trial Court Did not Abuse Its Discretion in Declining to Recall and Resentence Olea*

As discussed above, a court's decision to recall and resentence on its own motion pursuant to section 1172.1, subdivision (a) is discretionary.  Accordingly, under those circumstances, a court's ultimate decision not to recall and resentence is reviewed for an abuse of discretion.  (See *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082; see also *Carmony*, *supra*, 33 Cal.4th at p. 375 [concluding abuse of discretion standard applies to court's decision to strike a prior as well as decision to not to strike a prior].)  To establish an abuse of discretion, a defendant must establish the court "act[ed] while unaware of the scope of its discretion" (*People v. Tirado* (2022) 12 Cal.5th 688, 694), "considered

impermissible factors" (*Carmony*, *supra*, at p. 378), or made a choice "so irrational or arbitrary that no reasonable person could agree with it" (*Carmony,* at p. 377).

While we have concluded that this case is appealable since Olea's substantial rights were affected, we do not find that the trial court's actions reflected that it was "recalling and resentencing" Olea's sentence on "its own motion." Indeed, this runs counter to the trial court's explicit statement that it understood its discretion to recall and resentence Olea but decided not to exercise such discretion. We do not find any language within section 1172.1 which would indicate that any procedural steps taken by the trial court prior to ruling on a defendant's self-initiated petition would divest or limit the trial court's discretion to *not* recall and resentence on its own motion. In this case, we find no abuse of discretion in the trial court's decision not to recall and resentence Olea. The trial court clearly stated the reasons why it felt Olea's original sentence was just, including the egregious nature of Olea's conduct against Jane Doe, and the sentencing judge's reasoning behind the lengthy sentence. We find no basis to conclude that the trial court acted unaware of the scope of its discretion, considered impermissible factors, or that the decision was "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at p. 377.)

## III.  DISPOSITION

The court's order denying Olea's section 1172.1 resentencing petition is affirmed.

_____
                                    Wilson, J.


WE CONCUR:



_____
Greenwood, P. J.




_____
Grover, J.




*People v. Olea*
H051988

Trial Court:          Monterey County Superior Court

Trial Judge:          The Honorable Rafael Vazquez

Counsel:              Jeffrey M. Laurence, by appointment of the Office of the Attorney

                      General, for Plaintiff and Respondent.

                      Jonathan Grossman, Sixth District Appellate Program,

                      for Defendant and Appellant.